IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

01 JUL 23 PM 3: 28

COURT
H.D. OF ALABAMA

| | |
|---|---|
| IN RE:   BBL GROUP, INC., ) | **ENTERED** |
| Debtor, ) | |
| ) | **JUL 23 2001** |
| IN RE:   BENJAMIN B. LOFTON, ) | |
| Debtor, ) | |
| * * * * ) | CIVIL ACTION NO.  00-G-0031-E |
| CLEVELAND & CLEVELAND, P.C. ) | |
| and CHARLES CLEVELAND, ) | CIVIL ACTION NO.  00-G-1174-NE |
| ) | |
| Appellants, ) | |
| v. ) | |
| ) | |
| BBL GROUP, INC., ) | |
| ) | |
| Appellee, ) | |
| ) | |
| CLEVELAND & CLEVELAND, P.C. ) | |
| and CHARLES CLEVELAND, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| BBL GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION



Pursuant to jurisdiction granted by 29 U.S.C. §158(a)(1) the instant case is an appeal of a final judgment entered in a core proceeding by the Honorable James S. Sledge, U.S. Bankruptcy Judge, pursuant to 28 U.S.C. §§157 and 1334. This court has been asked to decide whether the final order of the Bankruptcy Court disallowing attorney fees precludes the state court action by *res judicata* or collateral estoppel and is a correct determination.

This proceeding arises from the jointly-administered bankruptcy cases of Benjamin B. Lofton [hereinafter Lofton] and his wholly-owned company BBL Group, Inc. [hereinafter BBL]. Upon the expiration of the "exclusive period"[1] Talent Tree Staffing Services, Inc. [hereinafter Talent Tree], possessor of a pledge of Lofton's stock in BBL,[2] proposed a plan of reorganization, known as "The BBL Plan" which included the following provisions:

1) payment in full of all claims of BBL creditors other than Talent Tree;
2) compromise of BBL's claims against Talent Tree; and
3) cancellation of Lofton's stock in BBL (Talent Tree's collateral), and the issuance of new stock to Talent Tree in cancellation of BBL's debt to Talent Tree.

---

[1] The Bankruptcy Code, 11 U.S.C. § 1121, allows debtors to proceed exclusively in good faith to solicit support for their timely plan of reorganization for a period of 180 days.

[2] Lofton was the president of BBL.

2

All creditors approved "The BBL Plan," as did Talent Tree, pledgee of Lofton's BBL stock and holder of Lofton's stock proxy. Lofton objected to the confirmation of "The BBL Plan," as did Charles Cleveland[3] who filed an objection on behalf of the estate.

On September 20, 1996, the Bankruptcy Court confirmed "The BBL Plan" over the objections of Lofton and Cleveland. Cleveland, on behalf of BBL, filed a notice of appeal of the BBL confirmation order and a motion for stay of execution. Lofton filed an identical notice and motion for stay pending appeal.[4]

The case at bar is an action by former counsel for a Chapter 11 debtor-in-possession to recover disallowed legal fees from assets of the debtor's estate that have been vested in the reorganized debtor.[5] Pursuant to "The BBL Plan" providing for payment of professional fees and expenses as "allowed" by

---

[3] Plaintiffs Cleveland & Cleveland, P.C. and Charles Cleveland [hereinafter Cleveland] served as bankruptcy counsel for BBL. Lofton appeared *pro se.*

[4] Lofton's motion was filed on the same day prior to the time it could have been received by certified mail. Lofton lived in St. Clair County at the time. Plaintiffs contend that Cleveland allowed Lofton, whose interests were adverse to those of the estate, to copy his pleadings before he served them.

[5] By the confirmed plan of reorganization only professional fees allowed by the Bankruptcy Court may be paid. Cleveland and his law firm filed an application for compensation for legal services rendered between October 1, 1996, and March 4, 1997, relating to appeals taken by BBL from the Bankruptcy Court's orders confirming the plans of the reorganization proposed for BBL and Lofton.

3

the Bankruptcy Court, Cleveland filed his Second Interim Application for

Compensation by Counsel for BBL [hereinafter Cleveland's Second Interim

Application]" on March 7, 1997.  In his application he sought compensation for

services rendered in opposing confirmation of "The BBL Plan" and appealing the

BBL Confirmation Order.  Both Talent Tree and the Bankruptcy Administrator

objected to Cleveland's Second Interim Application.[6]  The objections were

sustained by the Bankruptcy Court, with the notation on record that if Cleveland

had engaged in any activity giving rise to a conflict of interest between the

interests of Lofton and BBL then all fees previously awarded to Cleveland in the

BBL case would be subject to disgorgement pursuant to 11 U.S.C. §§ 327,[7]

328(c)[8] under the authority of *In re Prince,*[9] 40 F.3d 356 (11th Cir. 1994) on

---

[6] Talent Tree objected because Cleveland's services were rendered pursuant
to Lofton's instructions for the benefit of Lofton only who opposed the plan.  The
services conferred no benefit on the estate of BBL (services rendered in resisting
the cancellation of Lofton's stock, in the personal bankruptcy case of Lofton
opposing the  plan in which BBL had no interest, and consultations with Lofton
regarding undisclosed matters).

[7] "Except as otherwise provided in this section, the trustee, with the court's
approval, may employ one or more attorneys, accountants, appraisers, auctioneers,
or other professional persons, that do not hold or represent an interest adverse to
the estate, and that are disinterested persons, to represent or assist the trustee in
carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

[8] "Except as provided in section 327(a), 327(e), or 1107(b) of this title, the
(continued...)

4

grounds that Cleveland was not a "disinterested party."[10]   In discussing the

sanction of complete denial of fees the *Prince* court said: "While a complete

denial of fees may be extreme in some instances, this case requires nothing less.

'This sanction serves to deter future wrongdoing by those punished and also to

warn others who might consider similar defalcations.' *Gray*, 30 F.3d at 1323."

   The Bankruptcy Court denied payment of the fees as an

administrative expense from the bankruptcy estate because the services did not

---

[8](...continued)
court may deny allowance of compensation for services and reimbursement of
expenses of a professional person employed under section 327 or 1103 of this title
if, at any time during such professional person's employment under section 327 or
1103 of this title, such professional person is not a disinterested person, or
represents or holds an interest adverse to the interest of the estate with respect to
the matter on which such professional person is employed."

   [9] The Eleventh Circuit held the following:  1)  law firm's prior
representation of debtor and nondebtor spouse in estate planning matters and prior
representation of debtor's corporation created conflict of interest justifying denial
of professional fees for representation of debtor in bankruptcy;  2) law firm was
not "disinterested person" entitled to compensation; and 3) complete denial of fees
received was warranted.

   [10]  "The definition of a "disinterested person" includes a person that "(A) is
not a creditor ..." and '(E) does not have an interest adverse materially to the estate
... by reason of any direct or indirect relationship to, connection with, or interest
in, the debtor  ..., or for any other reason.  11 U.S.C. § 101(14)." *In re Prince* at
360.

benefit the bankruptcy estate.[11]  The bankruptcy decision was upheld by U.S.

District Judge William M. Acker, Jr. by order of December 16, 1997.  A portion of

Judge Acker's opinion follows:

> [I]n his testimony before the Bankruptcy Court, Cleveland indicated
> that the only beneficiaries of the appeal efforts would be BBL and/or
> its sole shareholder, Lofton. ... [I]t was not error for this court to have
> agreed with the Bankruptcy Court that appellants' services were
> "unnecessary" such that they did not constitute a compensable benefit
> to BBL's estate.
> ...
> [T]he great weight of authority holds that where, as here, services
> provided by counsel for the debtor-in-possession afford no benefit to
> the *bona fide* creditors of the estate, such services are not
> compensable from the debtor's estate.  *See e.g.,*  In re Reed, 890 F.2d
> 104, 105 (8th Cir. 1989) (noting that legal services that benefit
> Chapter 11 debtor only are not compensable from debtor's estate);  In
> re Word of Faith Fellowship, Inc., 1997 WL 527852 at *4 (Bankr.
> N.D. Ill.) (same);  In re Office Products of America, Inc., 136 B.R.
> 983, 986 (Bankr. W.D. Tex. 1992) (same).  As one court has
> observed, "[i]t is more appropriate that since such services benefitted
> only the debtor [or its principals], they be paid for by only the debtor
> [or its principals].  In re Storm, 101 B.R. 645, 648 (Bankr. S.D.Cal.
> 1989).

The Eleventh Circuit affirmed the order and following its mandate "The BBL

Plan" was consummated.  ·Lofton's BBL stock was canceled, new stock was

---

[11]  The assets of the BBL bankruptcy estate consisted primarily of a farm, a
non-assignable Maryland lottery ticket entitling BBL to receipt of  payments of
$175,000.00 per year for twenty years, and claims in litigation against its largest
creditor Initial Staffing Services, Inc., f/k/a Talent Tree Staffing Services, Inc.

issued to Talent Tree, the BBL farm and assets were sold, and creditors were paid. All property left in the estate of BBL vested in the reorganized BBL owned by Talent Tree.[12]

Citing dictum, appellants misinterpreted Judge Acker's opinion as a suggestion that plaintiffs seek recourse from the debtor,[13] ignoring his decision that Cleveland **could not get his fee** from the estate.

Cleveland filed his Final Fee Application stating that "*no additional fee is requested.*" In reliance thereon Reorganized BBL and Talent Tree did not object to it.[14] On April 12, 1999, the Bankruptcy Court entered its Order on Final Application for Payment of Professional Fees approving Cleveland's Final Fee Application in which the denied fees were not claims under "The BBL Plan." Thereafter, plaintiffs made a demand for payment and filed suit in state court

---

[12] The effect of "The BBL Plan" was that Talent Tree, whose debt was entitled to priority over Lofton's interest as shareholder, received ownership of the Reorganized BBL in cancellation of its debt.

[13] Cleveland claims that Judge Acker "determined" that the Disallowed Fees were to be paid by Talent Tree as owner of Reorganized BBL.

[14] Talent Tree maintains that had Cleveland disclosed his intent to request additional fees it would have objected to the Final Fee Application based on Cleveland's lack of "disinterestedness" under § 328(c)

July 14, 1999, seeking to collect their disallowed fees from the same assets of the debtor's estate.[15] The defendant removed the case to the Bankruptcy Court which awarded a summary judgment against appellants and in favor of the reorganized debtor on two grounds:  1)  appellants' claims are disallowed fees barred by *res judicata* and collateral estoppel; and 2)  appellants' services were not "authorized" by the reorganized debtor.  The court found that Cleveland presented no authority that a reorganized debtor is liable for professional services rendered to the debtor-in-possession when all assets of the reorganized debtor came from the debtor-in-possession via a confirmed plan.  The Bankruptcy Court correctly noted that Cleveland's claim for Disallowed Fees would amount to an "end run" of 11 U.S.C. § 330 which provides that all compensation of professionals retained by debtors must be approved by the Bankruptcy Court.  Thereafter, plaintiff moved to remand, contested the jurisdiction of the Bankruptcy Court, and requested abstention.  Asserting its jurisdiction, the Bankruptcy Court declined to abstain, and denied the motion to remand.  Cleveland has appealed the determination that *res judicata* and collateral estoppel prevent his proceeding in state court.  He has

---

[15] These assets are now vested in the reorganized debtor Talent Tree pursuant to the confirmed plan.

8

not appealed the Bankruptcy Court's ruling that his services were never authorized by the Reorganized Debtor.

"The doctrine of res judicata is one of finality, providing that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights and responsibilities of the parties and their privies." *Baptiste v. C.I.R.*, 29 F.3d 1533, 1539 (11th Cir. 1994), *aff'd in part, rev'd in part*, 29 F.3d 433 (8th Cir 1994), *cert. denied*, 513 U.S. 1190, 115 S. Ct. 1251, 131 L. Ed2d 133 (1995). Continuing, the court went on to say the following:

> As to the parties to the prior proceeding and their privies, res judicata constitutes an absolute bar to a subsequent judicial proceeding involving the same cause of action.
> ...
> The application of res judicata requires that : (1) the issue contested in both proceedings be identical; (2) the parties to the subsequent proceeding are the same as, or are in privity with the parties to the earlier proceeding; and (3) the earlier proceeding resulted in a final judgment on the merits.

*Id.*

*Res judicata* is applicable in the instant case based on the following final, non-appealable orders of the court: the BBL Confirmation Order (affirmed by the District Court and the Eleventh Circuit Court of Appeals); the order sustaining the objections of Talent Tree and the Bankruptcy Administrator to

Cleveland's Second Fee Application; and the Final Fee Order. "The BBL Plan" provides only for the payment of "allowed" professional fees and not for the disallowed ones. In its Interim Fee Order the Bankruptcy Court sustained Talent Tree's objection, expressly concluding that Cleveland's services conferred no benefit upon the BBL estate and that Cleveland's fees should not be paid from property of the estate being vested in the reorganized BBL under "The BBL Plan." Upon appeal of the Interim Fee Order Judge Acker affirmed the Bankruptcy Court's disallowance of Cleveland's fees. This disallowance became final when the Bankruptcy Court entered its Final Fee Order on Cleveland's fee application which had omitted the disallowed fees. The court holds that Cleveland's claim is barred by *res judicata*. He seeks payment from the same funds from which he has been denied access. He seeks payment from the same real-party-in-interest that the court has determined does not owe him.

The doctrine of collateral estoppel, or issue preclusion, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Mike Smith Pontiac v. Mercedes-Benz of No. America*, 32 F.3d 528, 532 (11th Cir. 1994), *cert denied*, 516 U.S. 1044,

10

116 S. Ct. 702, 133 L. Ed2d 659 (1996).  Again, the court went on to elaborate  as

follows:

> This circuit has previously established three prerequisites to the
> application of collateral estoppel:  (1)  the issue at stake must be
> identical to the one alleged in the prior litigation;  (2)  the issue must
> have been actually litigated in the prior litigation; and  (3)  the
> determination of the issue in the prior litigation must have been a
> critical and necessary part of the judgment in that earlier action. ...
> Further, the party against whom the earlier decision is asserted must
> have had a full and fair opportunity to litigate the issue in the earlier
> proceeding.

32 F.3d at 532.

In the Interim and Final Orders of the Bankruptcy Court  the court

found that Cleveland's services conferred no benefit upon BBL's estate and that

Cleveland's fees were not due from the assets being vested in Reorganized BBL

under "The BBL Plan."  Cleveland is thus precluded from re-litigating the issue of

whether his services conferred any benefit upon BBL's creditors.  The court, in

*In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999), *cert. denied*, 527 U.S.

1004, 119 S. Ct. 2339, 144 L. Ed2d 236 (1999), in determining whether two suits

involve the same claim or cause of action adopted the transactional test of the

Restatement (Second) of Judgements § 24:  "whether the two actions under

consideration are based on '*the same nucleus of operative facts.*'"  The court holds

that this action arises from the same "nucleus of operative facts" as Cleveland's

Second Interim Fee Application and Final Fee Application. It has already been

determined that the disallowed fees were never owed by Reorganized BBL. *See,*

*In re Abraham,* 221 B.R. 782, 785 (10th Cir. BAP 1998) ("[A] requested fee that is

disallowed cannot be collected since it was never due); *In re Gantz*, 209 B.R. 999

(10th Cir. 1997) (disallowed fees are not collectible because they are not owed by

the debtor). Cleveland cannot collect these fees. The court holds that Cleveland's

claims are barred by collateral estoppel.

        The court further holds that Cleveland is barred from asserting claims

for fees because his services were not necessary and conferred no benefit on the

Reorganized BBL. Because Cleveland was actually representing the interests of

Lofton his services could not possibly have conferred any benefit upon BBL, the

estate of BBL, or Reorganized BBL. His services were not necessary as required

by § 330.

        Cleveland was not a "disinterested person" under 327(a) and

§ 328(c). Throughout the course of the bankruptcy cases Cleveland has

represented the interests of Lofton as the sole beneficiary of avoidance of claims

against Talent Tree. As such he had a conflict of interests. There is a long

established policy that an attorney must not represent opposing interests. *See, In re Paine*, 14 B.R. 272, 274 (W.D. Mich. 1981) (Bankruptcy judge possesses discretionary power to deny attorney fees solely upon the basis that the attorney's representation is subject to conflicting interests).[16] In addition Alabama Rules of Prof'l Conduct 1.7 and 1.9 require a lawyer to exercise independent professional judgment on behalf of a client. In the case of a corporate client this independence of professional judgment is to the entity itself and not its individual stockholders, directors, officers, or employees. *In re Temp-Way Corp*, 95 B.R. 343 (E.D.Pa. 1989); *Matter of King Resources Co.*, 20 B.R. 191 (D.Colo. 1982).

In the context of bankruptcy 11 U.S.C. § 328(c) expressly allows the bankruptcy court to deny compensation where counsel is not disinterested or represents an interest adverse to the estate. *See, In re Alcon Corp.*, 168 B.R. 822 (Bankr. D.R.I. 1994) (Conflict of interest and lack of benefit to estate precluded

---

[16] The *Paine* court, at 274, set forth that this long established practice of an attorney's not representing conflicting interests was established by common law by the Seventeenth Century. *Shire v. King,* Yelverton 32. Anonymous, 7 Modern 47. "Put succinctly, 'when an actual conflict of interest exists, no more need be shown ... to support a denial of compensation.'" 14 B.R. at 274. The court noted that the denial of fees in such circumstances had been expressed by the Supreme Court and numerous lower courts in expression of "a strong federal policy against attorneys representing conflicting interests." 14 B.R. at 275.

13

compensation for attorney).  As in the case at bar,[17] the *Alcon* court said the

following:

> [O]n conflict of interest grounds, we rule that Mr. Pitts is precluded
> from receiving any compensation in this case.  Not only were Mr.
> Pitts' efforts throughout this case of no benefit to the Estate, but
> because of his allegiance to his "other client," they were actually
> intended to be counterproductive to the interests of the Debtor and its
> creditors.

*See* 7A  C.J.S. *Attorney & Client*, § 287(b) Conduct of Attorney (Adverse

interests) (1980); 7 Am Jur, *Attorneys at Law*, § 280.  Representing adverse

interests. (1997).

It is clear that Cleveland's actions have been for the benefit of Lofton

who by court order was removed from office and lost his stock. Cleveland could

not represent both Lofton and the estate.  Such an attempt is unthinkable.  As the

court in  *Woods v. City Nat. Bank & Trust Co. of Chicago*, 312 U.S. 262, 269, 61

S. Ct. 493, 85 L. Ed 2d 820, 826 (1941),  *reh'g denied,* 312 U.S. 715, 61 S. Ct.

736, 85 L. Ed 1145  (1941), *reh'g denied,* 312 U.S. 715, 61 S. Ct. 736, 85 L. Ed

1145 (1941), said:

> A fiduciary who represents security holders in a reorganization may
> not perfect his claim to compensation by insisting that although he

---

[17]  Cleveland's efforts were on behalf of Lofton and adverse to those of the
estate and creditors.

14

had conflicting interests, he served his several masters equally well or
that his primary loyalty was not weakened by the pull of his
secondary one.

This court agrees.  The Bankruptcy Court has ruled that he could not collect his

fees from the estate.  Judge Acker has ruled that he could not recover his fees from

the estate.  The Eleventh Circuit has upheld the ruling that he could not recover his

fees from the estate.  This is the law of the case.  Cleveland is precluded from

bringing suit to collect his fees in a state court action.  Removal to the Bankruptcy

Court was proper.  The state court suit is barred by *res judicata* and collateral

estoppel.

An order consistent with this opinion is being entered

contemporaneously herewith.

DONE and ORDERED this 23ʳᵈ day of July 2001.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

15